# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

RICARDO ELLIOTT,                    )
                                    )
    Petitioner,                     )
                                    )
vs.                                 )          **Case No. 4:03CV780MLM**
                                    )
MIKE KEMNA,                         )
                                    )
    Respondent.                     )

## MEMORANDUM AND ORDER

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Ricardo Elliott ("Petitioner") pursuant to 28 U.S.C. § 2254.  See Doc. 1.  Respondent Mike Kemna  filed  a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted.  See Doc. 7.  Petitioner is currently incarcerated at the Crossroads Correctional Center. Therefore, Mike Kemna ("Respondent"), as the superintendent of that institution, is the proper party Respondent. Also before the court is Petitioner's Motion Requesting Appointment of Counsel and for an Evidentiary Hearing.  See Doc. 23.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). See Doc. 11.

## I.
## BACKGROUND

An Information in Lieu of Indictment  was filed on August 11, 1998, charging Petitioner as follows:  Count I, the felony of assault in the first degree, in violation of Mo. Rev. Stat. § 565.050, in that on Tuesday, April 15, 1997, between 10:10 p.m. and 10:17 p.m., at 6706 Clayton Road, in St. Louis County, Missouri, Petitioner attempted to kill or cause serious physical injury to Thomas Franklin by shooting him and in the course thereof inflicted serious physical injury on him; Count II,

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

the felony of armed criminal action, in violation of Mo. Rev. Stat. § 571.015, in that Petitioner committed the felony of assault as charged in Count I and that he did so by, with, and through the use, assistance, and aid of a deadly weapon; Count III, the felony of attempt to commit robbery in the first degree, in violation of Mo. Rev. Stat. § 571.015, in that on Tuesday, April 15, 1997, between 10:10 p.m. and 10:17 p.m., at 6706 Clayton Road, in St. Louis County, Missouri, Petitioner, armed with a handgun, confronted Thomas Franklin and told Franklin to give Petitioner his sh- - while grabbing Franklin's wristwatch and such conduct was a substantial step forward toward the commission of robbery in the first degree and was done for the purpose of committing such robbery; and Count IV, the felony of armed criminal action, in violation of Mo. Rev. Stat. § 571.015, in that on Tuesday, April 15, 1997,  between 10:10 p.m. and 10:17 p.m., at 6706 Clayton Road, in St. Louis County, Missouri, Petitioner committed the felony of attempt to commit robbery in the first degree as described in Count III by, with, and through the use, assistance, and aid of a deadly weapon.   In Count V of the Information in Lieu of Indictment Petitioner was charged as a prior offender under Mo. Rev. Stat. § § 558.016 and 557.036.4, in that Petitioner pleaded guilty to or was found guilty of a felony.  In Count V Petitioner was also charged as a persistent offender under Mo. Rev. Stat. § 557.036.4, in that he pleaded guilty to or was found guilty of two or more felonies committed at different times.  Petitioner's prior felonies as stated in Count V are as follows: (1) on January 17, 1990, in St. Louis City, Petitioner pleaded guilty to the felony of Illegal Possession Schedule II Controlled Substance Cocaine, which offense was committed on May 17, 1989, and (2) on January 17, 1990, in St. Louis City, Petitioner pleaded guilty to the felony of Assault Second Degree, which offense was committed on September 16, 1989.  See Resp. Ex. B at16-18.

The Missouri appellate court described the testimony at Petitioner's trial as follows:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

On the evening of April 15, 1997, Thomas Franklin ("Victim"), his girlfriend Robin Briedon ("Briedon"), Pete Siegel ("Siegel") and Myrtle Hammond had plans to attend a move at a St. Louis movie theater. While waiting in the theater lobby, victim recognized an acquaintance, Theodore Royson ("Royson"), watching another individual, who would later be identified as defendant, playing an arcade game. Victim approached Royston and began conversation. While speaking with Royston, victim noticed defendant was wearing a green baseball cap and a green shirt. After a few minutes, victim proceeded into the theater with the rest of his party.

During the film, victim noticed Royston and defendant enter the theater. When the film was over, victim and his party departed through a rear door. While exiting, Siegel was stopped by Royston, who began speaking with him. Victim and Briedon proceeded to their car located in the lighted parking lot. As victim attempted to open the passenger door of the automobile, the assailant appeared behind him and stuck the barrel of a gun into his back. The assailant threatened to kill victim and Briedon if victim did not turn over his watch and necklace. Victim turned around and attempted to wrestle the gun from the assailant. During the struggle, the gun went off between five and six times, and victim was shot in the stomach and legs. The assailant fled from the scene, and victim was taken to the hospital.

At the hospital, victim gave the police a description of the assailant. Later, victim assisted police in drawing up a composite sketch of the assailant. Based on this information, the police were able to put together a photographic lineup and made a tentative identification of defendant as the assailant. In a separate and isolated showing, Siegel also viewed the photographic lineup and positively identified defendant as the assailant. Neither victim nor Siegel knew defendant prior to the shooting.

The police also put together a video lineup in which suspect's mannerisms, speech, and walk could be observed. In separate showings of the video lineup, both victim and Siegel identified defendant as the assailant.

Resp. Ex. E at 2-3.

The victim, Franklin, testified at Petitioner's trial that when he left the theater, he saw Petitioner standing up against a wall; that he still had on the green ball cap and shirt; that he came very close to Petitioner when walking by him; and that he and Petitioner were face to face. See Resp. Ex. A4 at 166. Franklin further testified that as he was opening his car door he felt something in his

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

back; that a person said he would kill Franklin and his "girl" if Franklin did not give him his jewelry; that Franklin then grabbed the gun trying to protect himself; and that he and Petitioner began wrestling over the gun, the gun went off, and he was shot.  See id.  Franklin stated that of the time of this incident he was wearing a gold watch and a gold bracelet and that police returned these items to him.

At Petitioner's trial Franklin identified Petitioner as the person he saw by the video games, the person who was standing by the wall when he exited the theater, and the person who shot him. Franklin also testified that he always remembered that Petitioner had on the hat and that he had ears which stuck out of the hat. See id. at 169, 183.   Franklin further testified that prior to and after his having surgery he gave police a description of the man who shot him and that he told police that the shooter was the same person he saw in the theater. See id. at 183.  When the police first spoke to Franklin, he told them that his assailant was wearing a green hat, a green shirt, and bluejeans, and that he was thin and a little bit shorter than himself. See id. at 188.  Franklin further testified that, subsequently, the police came to his house and showed him a photographic lineup, which included six photographs, and that he saw his assailant in this lineup.   Franklin also said that after he was shown the photo lineup, police showed him a video lineup; that he recognized Petitioner's ears which stuck out when he wore a hat; and that he identified Petitioner in the video lineup. See id. at 186-87.

At Petitioner's trial, Siegel identified Petitioner as the  person he saw in the theater lobby the night of the robbery and as the person he saw leaning against a wall when he exited the theater. Siegel testified that as he was getting into his vehicle in the parking lot after exiting the theater he observed Franklin in a struggle; that he went to help Franklin; that as he rounded Franklin's car he

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

heard gunshots; that he saw that the person with whom Franklin was struggling was wearing a green hat and shirt; and this was the same clothing he saw on the person inside the theater who was also at the wall by the exit door.  See Resp. Ex. A5 at 253-354.

On January 21, 1999, after a trial by jury, Petitioner was found guilty of one count of first degree assault, one count of attempted first degree robbery, and two counts of armed criminal action.[1]  See Resp. Ex. B at 35-38.  The trial court found that Petitioner was a prior and persistent offender and sentenced him to terms of twenty years for each of Counts I and II, fifteen  years for Count III, and twenty years for Count IV.  Petitioner's sentences are to run concurrent with one another.  See Resp. Ex. B at 45-46.

Petitioner filed a direct appeal to the Missouri appellate court Petitioner in which he raised the following issues: (1) the trial court erred in overruling Petitioner's objection to the State's peremptory challenge to venire persons Ackles and Morgan, both African-Americans, as the strikes were racially motivated; (2) the trial court erred in permitting the State in closing argument to denigrate the tactics of defense counsel, to misstate the evidence, and to suggest that defense counsel fabricated a defense, in violation of Petitioner's right to due process under the Sixth and Fourteenth Amendments; and (3) the trial court erred in overruling Petitioner's motion for a new trial and imposing judgment and sentence against Petitioner because inferential hearsay of Detective Vilcek violated Petitioner's right to confront and cross-examine his accusers under the Sixth and Fourteenth Amendments.  See Resp. Ex. C at 12-16.   By Order, dated February 15, 2000, the Missouri appellate court affirmed the judgment against Petitioner.  See Resp. Ex. E.

---

[1]        The record reflects that Petitioner's first trial resulted in a hung jury.  See Resp. Ex. A1-A2.

5

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

On August 7, 2000, Petitioner filed a pro-se post conviction relief motion pursuant to Rule 29.15. See Resp. Ex. G at 3-9. Counsel entered an appearance to represent Petitioner and filed an amended post-conviction relief motion. See Resp. Ex. G at 10-21. The court held a hearing pursuant to Petitioner's Rule 29.15 motion on one issue raised by Petitioner and denied him a hearing on other issues. See Resp. Ex. F. On May 24, 2002, the motion court denied Petitioner's request for post-conviction relief. See Resp. Ex. G at 27-38.

On January 30, 2002, Petitioner filed an appeal of the motion court's denial of his post-conviction relief motion. See Resp. Ex. H. In the appeal of his post-conviction relief motion Petitioner raised the following issues: (1) Petitioner was denied ineffective assistance of counsel because his trial counsel failed to call alibi witness, Audrey Stiles, and (2) the trial court committed plain error, which resulted in a miscarriage of justice and/or manifest injustice in not ruling that the tainted testimony of Franklin and Siegel was inadmissible. See Resp. Ex. H at 12-14. By Order, dated June 11, 2002, the Missouri appellate court denied Petitioner the relief sought in the appeal of the motion court's denial his post-conviction relief motion and affirmed the judgment against Petitioner. See Resp. Ex. J.

On June 10, 2003, Petitioner filed a § 2254 Petition with this court in which he raises the follows grounds for habeas relief:

> **(1)** Petitioner received ineffective assistance of counsel because his counsel failed to prevent the State from presenting evidence regarding an anonymous tip the police received connecting Petitioner to the crime;
>
> **(2)** Petitioner received ineffective assistance of counsel because his counsel failed to call an expert witness in dermatology;
>
> **(3)** Petitioner received ineffective assistance of counsel because his counsel failed to call Petitioner's girl friend, Audrei Stiles, to testify;

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**(4)** Petitioner received ineffective assistance of counsel because his counsel failed to call Sharrice Woodson to testify;

**(5)** Petitioner received ineffective assistance of counsel because his counsel failed to present Petitioner's dental records at trial;

**(6)** Petitioner received ineffective assistance of counsel because his counsel failed to investigate and secure the testimony of Robyn Briedon and Myrtle Hammond at trial;

**(7)** Petitioner received ineffective assistance of counsel because his counsel failed to suppress identification procedures used in Petitioner's case and for failing to object at trial to the use of suggestive line-up procedures;

**(8)** Petitioner received ineffective assistance of counsel because his counsel failed to call Officer Danielle Moore to testify;

**(9)** Petitioner received ineffective assistance of counsel because his counsel failed to call Theodore Royston to testify;

**(10)** Petitioner received ineffective assistance of counsel because his counsel failed to move for a mistrial when the victim allegedly threatened Theodore Royson outside the courtroom;

**(11)** The trial court erred in overruling Petitioner's objection to the State's peremptory challenges of two venirepersons, both African-Americans;

**(12)** The trial court erred in overruling Petitioner's objection to the State's closing argument;

**(13)** Petitioner should not have been convicted because the line-up procedure used to identify him was improper.

## II.
## MOTION FOR APPOINTMENT OF COUNSEL AND EVIDENTIARY HEARING

Under the Rules Governing Section 2254 Cases, the court has the discretion to grant an evidentiary hearing.  Rule 8(a) states that "[I]f the petition is not dismissed at the previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon review of those proceedings...determine whether an evidentiary hearing is

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

required."  In considering Petitioner's petition, the court has been furnished with the complete transcript of Petitioner's trial, the legal file as well as various post-trial materials.  Upon review of the state court record, as supplemented by the motions and pleadings in this case, the undersigned finds that the record as it now exists is adequate and that no evidentiary hearing is required.  See 28 U.S.C. § 2254 Rule 8(a); Amos v. State, 849 F.2d 1070, 1072 (8th Cir.), cert. denied, 488 U.S. 861 (1988).  Therefore the court will deny Petitioner's Motion for Evidentiary Hearing.

Although there is no constitutional right to appointment of counsel in habeas corpus proceedings, Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994), the Eighth Circuit Court of Appeals has thoroughly discussed those circumstances in which the appointment of counsel is appropriate.  Specifically, in Abdullah v. Norris, 18 F.3d 571 (8th Cir. 1994), the Eighth Circuit offered the following guidance:

> A magistrate judge or district judge may appoint counsel for a habeas petitioner if "the interests of justice so require."  18 U.S.C.A. § 3006A(a)(2), (a)(2)(B) (West Supp. 1993).  If a district court conducts an evidentiary hearing on the petition, the interests of justice require that the court appoint counsel for the petitioner.  See Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts (hereinafter "Habeas Rules").  If no evidentiary hearing is necessary, the appointment of counsel is discretionary.

> When exercising its discretion, a district court should first determine whether a pro se habeas petitioner has presented a nonfrivolous claim.  Battle [v. Armontrout, 902 F.2d 701, 702 (8th Cir. 1990)].  If the petitioner has presented only claims that are frivolous or clearly without merit, the district court should dismiss the case on the merits without appointing counsel.  See Habeas Rule 4.  If the petitioner has presented a nonfrivolous claim, the district court should then determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the petitioner and the court to such an extent that "the interests of justice so require" it.  18 U.S.C. § 3006A(a)(2); see also Royston outside the Battle, 902 F.2d at 702. To determine whether appointment of counsel is required for habeas petitioners with nonfrivolous claims, a district court should consider the legal complexity of the case, the factual complexity of the case,

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the petitioner's ability to investigate and present his claim, and any other relevant factors.  See Battle, 902 F.2d at 702; Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986).

Id.

The court finds, considering all of the above standards in conjunction with the claims raised by petitioner in his petition, that the appointment of counsel would not benefit petitioner and the court to such an extent that the interests of justice require the appointment of counsel.  Moreover, the court finds that the petition of petitioner contains claims that are not legally complex or factually complex and that petitioner has demonstrated an ability to this point of being able to present his claim in a clear and concise fashion.  As the court has found that a hearing is not  necessary to resolve petitioner's petition for writ of habeas corpus, the court further finds that it is not necessary for the court to appoint counsel pursuant to Abdullah, supra.[2]

### III.
### EXHAUSTION ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings.  See  Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997) (Sweet).  Failure to raise a claim in a post-conviction appeal is an abandonment of a claim.  See id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)).  A state prisoner who fails "'to follow applicable state procedural rules [for] raising claims' (citation omitted) .   .   .  , is procedurally barred from raising them in a federal habeas action,

---

[2]   The court is aware of the Antiterrorism and Effective Death Penalty Act of 1996 ("the Act"), which was signed into law by the President of the United States on April 24, 1996, and of Title I of that Act which significantly amends habeas corpus law.  However, the Act does not amend the law with respect to the appointment of counsel.  The Act merely provides that the court may appoint counsel for an applicant who is or becomes financially unable to afford counsel as governed by 18 U.S.C. § 3006A.  Title 18 U.S.C. § 3006A is discussed above by the Eighth Circuit in Abdullah.

regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991) (Coleman)).  "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted).   "[F]airly present" means that state prisoners are "'required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12.  A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id.

In Duncan v Walker, 533 U.S. 167, 178-79 (2001) (Duncan), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity to fully consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." See e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (O'Sullivan ); Rose v. Lundy, 455 U.S. 509, 518-19 (1982) (Rose). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" Duncan, 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)).  As stated by the Court in O'Sullivan, 526 U.S. at  844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Court in <u>Duncan</u> further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. <u>See</u> <u>id.</u> at 180.  Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" <u>Id.</u> (quoting <u>Rose</u>, 455 U.S. at 520).

A state prisoner can overcome procedural default if he or she can demonstrate cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice.  <u>See</u> <u>Coleman</u>, 501 U.S. at 750-51.  "A habeas petitioner who wishes to have a procedurally defaulted claim [considered] on its merits now 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" <u>McCoy v. Lockhart</u>, 969 F.2d 649, 650 (8th Cir. 1992 ) (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992)).  Actual innocence is required to meet the miscarriage-of-justice exception to the procedural requirements described above.  <u>See</u> <u>Sweet,</u> 125 F.3d at 1152 (citing <u>Schlep v. Delo</u>, 513 U.S. 298, 316 (1995)).  Indeed, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." <u>Id.</u> (citing <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-55 (8th Cir. 1997)).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.  Petitioner has timely filed his § 2254 Petition with this court.

Petitioner, however, failed to raise the claims of Grounds 1, 2, 4-10, and 13 in his appeals to the Missouri appellate court.  As such, the court finds that Petitioner has procedurally defaulted these claims.  Although Petitioner has procedurally defaulted Grounds 1, 2, 4-10, and 13, he may nonetheless raise these claims in his § 2254 Petition if he can establish both cause and prejudice for his default.  Petitioner has not suggested any basis upon which his procedural default of Grounds 1,

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

2, 4-10, and 13 should be excused.   As such the court further finds that Grounds 1,2, 4-10, and 13 should be dismissed.

## IV.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996.  See Lindh v. Murphy, 521 U.S. 320, 326 (1997).  Petitioner's § 2254 petition was received by this court on June 2, 1999, and, therefore, the AEDPA standards apply to his petition for writ of habeas corpus.

In Williams v. Taylor, 529 U.S. 363, 412-13 (2000) (Williams), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.   The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the state court."  Id. at 412.  The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to .  .  .  clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of  .  .  .  clearly established Federal Law, as determined by the Supreme Court of the United States."   Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411.   "Rather the application [by the state-court] must also be unreasonable." Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), (Copeland), cert. denied, 532 U.S. 1024 (2001). See also, Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001), cert. denied, U.S. 1138 (2002).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are  materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent."  Id. at 407.  See also, Price v. Vincent, 123 S.Ct. 1848 (May 19, 2003).  It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, as long as the state court's decision is not contrary to such law.  See Early v. Packer, 537 U.S. 3, 8 (2002) (Early).  For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal rule from [Supreme Court] cases but unreasonably appl[y] it to the facts of the particular state prisoner's case" or "unreasonably [extend] a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably [refuse] to extend that principle to a new context where it should apply."  Id.  The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts [including the Eighth Circuit] have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue."  Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should

13

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness."  Boyd v. Minnesota, 274 F.3d  497, 500 (8th Cir. 2001) (Boyd).    The state court's decision "must be rebutted by clear and convincing evidence."  King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001) (King), cert. denied, 535 U.S. 934 (2002).  For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.  See Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applies federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 124 S.Ct. 2140,  2149 (2004) (Yarborough).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. See Brown v. Leubbers, 2004 WL 1315842 at *2 (8th Cir. June 15, 2004) (Brown). The court held in Brown that:

14

From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

2004 WL 1315842 at *2.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999).   The court further held in Brown that it "is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits."

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

by the AEDPA, "because there is no apparent state-court adjudication to which" this standard can be applied.  Brown v. Luebbers, 344 F.3d 770, 785 (8th Cir. 2003), rev'd on other grounds,  2004 WL 1315842 at *2 (8th Cir. June 15, 2004) (citing Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review.")).

## V.
## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense."  Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984) (Strickland)).   The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  See id. at 690.  To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice.  Id. at 694.  To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id.  The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a  petitioner] makes an insufficient showing on one

16

[component]." Strickland, 466 U.S. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> [P]resenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides.  No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.  Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  (citation omitted).  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has articulated an exception to the rule articulated in Strickland that

to prevail on an ineffective assistance of counsel claim a habeas petitioner must show  a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

different." <u>Mickens v. Taylor</u>, 535 U.S. 162, 166 (2002) (<u>Mickens</u>) (citing <u>Strickland</u>, 466 U.S. at 694). The Court held in <u>Mickens</u> that:

> We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. <u>See</u> <u>Cronic</u>, supra, at 658-659, 104 S.Ct. 2039; <u>see also</u> <u>Geders v. United States</u>, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Gideon v. Wainwright, 372 U.S. 335, 344-345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. <u>Cronic</u>, supra, at 659, n. 26, 104 S.Ct. 2039.

## VI.
## DISCUSSION

**Ground 3- Petitioner received ineffective assistance of counsel because his counsel failed to call Petitioner's girl friend, Audrei Stiles, to testify:**

Petitioner contends that his trial counsel was constitutionally ineffective because counsel failed to call Petitioner's girlfriend, Audrei Stiles, to testify at his trial. Petitioner states that Ms. Stiles would have testified that Petitioner was at the Gatewood Beauty Salon at the time of the robbery and that she would have corroborated Petitioner's testimony. Petitioner further suggests that failure to call Ms. Stiles created the presumption that he was "hiding something." Doc. 1, Attach.

Upon denying Petitioner's appeal on the issue raised in Petitioner's Ground 3, the Missouri appellate court stated:

> To succeed on a claim of ineffective assistance of counsel, a movant must allege facts, not refuted by the record, showing that (1) counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and (2) he was thereby prejudiced. <u>Coats</u> [<u>v. State</u>, 939 S.W.2d 912, 914 (Mo. 1997)]. A movant has the heavy burden of

18

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

overcoming the presumption that counsel's actions were competent.  <u>Lyons v. State</u>, 39 S.W.3d 32, 36 (Mo. banc 2001).

Counsel's decision not to call a witness to testify a trial is generally considered a matter of trial strategy and is virtually unchallengeable. <u>Kuhlenberg v. State</u>, 54 S.W.3d 705, 708 (Mo. App. 2001); <u>Kayser v. State</u>, 784 S.W.2d 820, 822 (Mo. App. 1990).  To prove ineffectiveness for failure to call a witness, a movant must show that: (1) the failure to call the witness was something other than reasonable trial strategy, (2) the witness could have been located through reasonable investigation, (3) the witness would have testified if called, and (4) the witness's testimony would have provided the movant with a viable defense.  <u>Kuhlenberg</u>, 54 S.W.3d at 708.  Moreover, to prove prejudice, the movant must show that the witness's testimony is more than merely cumulative of the evidence presented at trial.  <u>Kayser</u>, 784 S.W.2d at 822.

Movant maintains that Stiles would have testified that, at the time of the alleged incident, she and Movant were at a hair styling salon in East St. Louis. Stiles' testimony, however, would have been duplicative of testimony properly before the jury by way of Peggy Gatewood, who testified that Movant and Stiles were at her salon on the evening in question.  Movant, therefore, is unable to show he was prejudiced by his counsel's failure to call Stiles.

Moreover, Movant has not shown that the failure to call Stiles was anything but a matter of trial strategy.  Given that Stiles was called as a witness in Movant's first trial, defense counsel knew the nature of her alibi testimony.  Counsel's decision to present this testimony through another witness suggests a trial strategy decision, which Movant has not refuted. Point one is denied.

This court will consider the issue of Petitioner's Ground 3 pursuant to <u>Williams</u>, 529 U.S. 412-13.  The court first notes that while the Missouri appellate court did not cite <u>Strickland</u> upon setting forth the applicable standard for determining whether Petitioner received effective assistance of counsel, the Missouri appellate court did apply the two pronged standard of <u>Strickland</u> and concluded that counsel's performance was reasonable, that Stiles testimony was cumulative, and that Petitioner was not prejudiced by the failure of counsel to call Stiles as a witness.  Reasonable

19

PDF created with FinePrint pdfFactory trial version  www.pdffactory.com

application of clearly established federal law as described by <u>Williams</u> "does not require citation of [United States Supreme Court or other federal] cases-- indeed, it does not even require awareness of [such] cases, so long as neither the reasoning nor the result of the state court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 123 S.Ct. 362, 365 (2002). This court notes, moreover, that Petitioner was identified by the State's witnesses as being present at the movie theater on the night of the shootings and as being the shooter.  Petitioner's counsel did call Ms. Gatewood as a witness and she testified that Petitioner was present at her salon the night of the shooting.  Petitioner's counsel did call Ms. Stiles as a witness at Petitioner's first trial and thus counsel knew that Ms. Stiles testimony would duplicate that of Ms. Gatewood.

Further, in regard to a decision not to call a witness, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. <u>See</u> <u>Strickland</u>, 466 U.S. at 688-89.  Federal law provides that counsel must exercise reasonable diligence to produce exculpatory evidence.  <u>See</u> <u>Kenley v. Armontrout</u>, 937 F.2d 1304, 1298 (8th Cir. 1991).  The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally  left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" <u>Hanes v. Dormire</u>, 240 F.3d 694, 698 (8th Cir. 2001) (<u>Hanes</u>) (citations omitted).  Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." <u>Id.</u>  The decision whether to call witnesses, cross examine witnesses, or introduce evidence may be a matter of trial strategy.  <u>See</u> <u>Hall v. Lubbers,</u> 296 F.3d 685, 694 (8th Cir. 2002), <u>cert. denied</u>, 538 U.S. 951 (2003);  <u>Battle v. Delo</u>, 19 F.3d

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1547,1556 (8th Cir. 1994).  "Strategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Id. at 1556 (citation omitted).

The court finds that the decision of the Missouri appellate court was not contrary to federal law as set forth above and that it was a reasonable interpretation of federal law in regard to the issue raised in Petitioner's Ground 3.  See Hanes, 240 F.3d at 698.  Additionally, the Missouri appellate court reasonably applied federal law  to the facts of Petitioner's case.  As such, the court finds that Petitioner's Ground 3 is without merit and that it should be dismissed.

**Ground 11 - The trial court erred in overruling Petitioner's objection to the State's peremptory challenges of venirepersons Ackles and Morgan, both African-Americans**:

Petitioner asserts that the State used three of its peremptory challenges to remove the only three available African-American jurors; that the trial court rejected the State's explanation for striking venireperson Moore because he had previously served on a jury; that the State struck Ackles because she was a nurse; that the court allowed this strike based on the State's argument that nurses want to be helpful rather than punitive; that the State struck venireperson Morgan because he was a retired postal worker; and that the court found the reason for striking Morgan was race-neutral as the State also struck a Caucasian venireperson who was also a postal worker.  Petitioner argues that the reasons given by the State for striking venireperson Ackles and Morgan were "a cover up" for the racially motivated strikes.  See Doc. 1, Attach.

Upon the prosecutor's exercising peremptory strikes to remove Ackles and Morgan from the venirepanel, Petitioner's counsel challenged the State's motive pursuant to Batson v. Kentucky, 476 U.S. 79 (1986) (Batson).  As stated by Petitioner, the trial court  allowed the strikes of Ackles

21

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

and Morgan.

Upon addressing the issue raised in Petitioner's Ground 11, the Missouri appellate court

stated:

> The process delineated in <u>Batson</u> allows a defendant to challenged the state's peremptory strikes to vindicate his own equal protection rights.  <u>State v. Parker</u>, 836 S.W.2d 930, 933 (Mo. 1992).  The procedure is threefold: (1) defendant must raise a <u>Batson</u> challenge to one or more specific venirepersons struck by the state and identify the cognizable racial group to which they belong; (2) the state must then come forward with "reasonably specific and clear race-neutral explanations for the strike"; and (3) defendant must then show the state's alleged reasons for the strike were merely pretextual and the strikes were racially motivated.  <u>State v. Daniels</u>, 865 S.W.2d 400, 402 (Mo. App.  1993).  Even if the prosecutor's explanation results in the disproportionate removal of minority venirepersons, disparate impact alone will not convert a facially race-neutral explanation into a per se violation of equal protection.  <u>Parker</u>, 836 S.W.2d at 934.  We view the state's strikes in light of the totality of the facts and circumstances surrounding the case.  <u>State v. Winston</u>, 959 S.W.2d 874, 879 (Mo. App. 1997).

> The decisive question in the typical peremptory challenge inquiry is whether counsel's race-neutral explanation for the challenge will be believed.  <u>State v. Wilhite</u>, 858 S.W.2d 293, 296 (Mo. App. 1993).  The best evidence often will be the demeanor of the attorney who exercises the challenge.  <u>Id.</u>  Consequently, the trial court's determination regarding purposeful discrimination is a finding of fact that should not be disturbed on appeal unless clearly erroneous.  <u>Daniels</u>, 865 S.W.2d at 402.  To be clearly erroneous, the reviewing court must have a "definite and firm conviction that a mistake was made."  <u>Id.</u>

Resp. Ex. E at 3-4.

The Missouri appellate court continued to considered the State's explanation for striking

venireperson Ackles which was that nurses do not want to punish people; that it was the prosecutor's

experience that nurses do not make good jurors for the State; that the State did not intend to

introduce the victim's medical records; and that the State was concerned that if the nurse juror was

not able to view the medical records, she might feel the need to inject her opinions as to what

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

constitutes serious physical injury.  See id. at 4-5.  The Missouri appellate court considered that "[c]ounsel may rely upon perceptions of attitudes based upon employment along with other background facts in utilizing peremptory strikes."  Id. at 5 (citing United States v. Miller, 939 F.2d 605, 606-608 (8th Cir. 1991) (other citations omitted)).  The Missouri appellate court further considered that prosecutors may exercise peremptory strikes based on "hunches" and "past experience."  Id. (citing State v. Antwine, 743 S.W.2d 51, 64 (Mo. 1987)).

Specifically in regard to the State's striking venireperson Morgan, an African-American postal worker, the Missouri appellate court stated:

> A white venireperson who was employed as a postal worker was also struck by the state.  As a race-neutral reason for the strike, the state explained the strike was based upon the occupation of the venireperson.  As previously stated, attitudes toward employment may be used as race-neutral reasons for peremptory strikes.  Antwine, 743 S.W.2d at 64.  In State v. Payton, 747 S.W.2d 290 (Mo. App. 1998), when asked to provide a race-neutral reason for a peremptory strike, the prosecutor stated he always struck postal workers, white or black.  Id. at 293.  This court found the reason legitimate and deferred to the trial court's assessment of the prosecutor's credibility.  Id. at 293  [other citation omitted]. We too defer to the credibility of the trial court and find no clear error.

Resp. Ex. E at 5-6.

In regard to Petitioner's claim that the State struck the white postal worker to camouflage a racially motivated strike of the African-American postal worker, the Missouri appellate court said that  "[s]uch conclusory accusations are better left as credibility issues for the trial court."  Id. at 6.

Pursuant to Williams, the court will consider federal law applicable to the issue raised in Petitioner's Ground 11.  Federal  law is well settled that the Equal Protection Clause forbids a prosecutor from using peremptory challenges to exclude otherwise qualified persons from the jury based solely on their race.  See  Devose v. Norris, 53 F.3d 201, 204 (8th Cir. 1995) (Devose).  In

23

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

Batson, 476 U.S. at 96, the United States Supreme Court held that "in order to establish an equal

protection violation, a defendant must first establish a prima facie case of purposeful discrimination

in the selection of the jury panel."  The Eighth Circuit has further explained that:

> To establish a prima facie case, the defendant must show that he is a
> member of a cognizable racial group and that the prosecutor exercised
> peremptory challenges to remove members of his race from the venire.
> Batson, 476 U.S. at 96.  He then "'must show that these facts and any other
> relevant circumstances raise an inference that the prosecutor used [his
> peremptory] practice to exclude the veniremen from the petit jury on account
> of their race.'" United States v. Battle, 836 F.2d 1084, 1085 (8th Cir. 1987)
> (quoting Batson, 476 U.S. at 96).  Once the defendant has established a prima
> facie case of race discrimination, the government has "the burden of
> articulating a clear and reasonably specific neutral explanation for removing
> a venireperson of the same race as the defendant." United States v. Cloyd,
> 819 F.2d 836, 837 (8th Cir. 1987).
>
> Whether an explanation is neutral is a question of comparability.  "It is
> well-established that peremptory challenges cannot be lawfully exercised
> against potential jurors of one race unless potential jurors of another race with
> comparable characteristics are also challenged."  Doss v. Frontenac, 14 F.3d
> 1313, 1316-17 (8th Cir. 1994) [remaining citations omitted].

Devose, 53 F.3d at 204.  See also, United States v. Hill, 249 F.3d 707, 714 (8th Cir. 2001) (denying

Batson claim when the defendant failed to show that similarly situated white venirepersons were not

struck from the jury panel); United States v. Brooks, 2 F.3d 838 (8th Cir. 1993).

Thus, Batson provides for a "three-step process for analyzing a prosecutor's use of

peremptory strikes." Weaver v. Bowersox, 241 F.3d 1024, 1028 (8th Cir. 2001) (Weaver).  Upon

a federal court's review of a state trial court's rulings pursuant to Batson objections, the Eighth

Circuit has noted that "a trial court's determination of the Batson prima facie step is highly fact-

intensive," and "is based largely upon information 'that will not be evident from a reading of the

24

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

record.'" Id. at 1030 (citing United States v. Moore, 895 F.2d 484, 485-86 (8th Cir. 1990) (Moore)).

On  habeas  review,  pursuant  to  28 U.S.C. § 2254(e)(1), federal courts afford "broad latitude in determining questions of fact by virtue of the statutory presumption in favor of the state court fact-finding." Id. "[D]eference to trial court fact-finding is doubly great [upon consideration of a Batson claim] because of the 'unique awareness of the totality of the circumstances surrounding voir dire.'" Id. (citing Moore, 895 F.2d at 486).   Because Batson claims require factual determinations, federal review of a Batson claim pursuant to a habeas petition is governed by § 2254(d)(2).   Id. at 1031 n.2.   The United States Supreme Court holds that a prosecutor's observations about a potential juror in voir dire, as well as what is said, may form a legitimate nondiscriminatory reason for exercising a peremptory strike.   See Purkett v. Elem, 514 U.S. 765, 768-69 (1995).

Additionally, in Miller, 939 F.2d at 608, cited by the Missouri appellate court, the prosecutor struck three jurors because of their association with the education field and struck other jurors based on their occupation.   In response to a Batson challenge regarding the venirepersons in the education field, the prosecutor in Miller stated that, "based upon his experience, 'teachers tend to be more forgiving of individuals and more sympathetic and would not make a good juror.'"   Id. The district court accepted the prosecutor's explanations as reasonable and race-neutral, and ruled that there was no Batson violation.   See id. at 608.

Upon considering the Batson violations alleged by the defendant  in Miller, 939 F.2d at 608, the Eighth Circuit held that:

> Each reason the government offered involved the occupation of the stricken venire persons.  The government bore the burden of proving that its strikes were made for legitimate, race-neutral reasons. After hearing the

25

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

government's reasons, the district court overruled [the defendant's] <u>Batson</u> objection, finding that the government had met its burden. We grant great deference to the district court's finding and review it under a clearly erroneous standard. <u>See</u> <u>Batson</u>, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21 ("Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."); <u>United States v. Matha</u>, 915 F.2d 1220, 1221, 1222 (8th Cir.1990).

Also, the Eighth Circuit has stated that it has "consistently allowed the government to use employment status as a valid, race-neutral proxy for juror selection, so long as the government exercises its challenges in a consistent manner. <u>See</u> <u>United States v. Atkins</u>, 25 F.3d 1401, 1402 (8th Cir. 1994) (citing <u>United States v. Johnson</u>, 905 F.2d 222 (8th Cir.1989) (holding that employees of the Division of Family Services could be struck since the employees might be overly sympathetic to the defendant); <u>Miller</u>, 939 F.2d 607-09).

The court finds, in regard to the issue raised in Petitioner's Ground 11, that not only did the Missouri appellate court consider the holding of the Supreme Court in  <u>Batson</u>, but that the Missouri appellate court's decision in this regard is consistent with <u>Batson</u> and other federal cases holding that occupation is a valid consideration for choosing strike a juror.   As such, the court further finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 11 is not contrary to federal law and that it is a reasonable interpretation of federal law.  The court further finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.

**Ground 12 -  The trial court erred in overruling Petitioner's objection to the State's closing argument:**

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Petitioner contends that during closing argument the prosecutor misstated the evidence, denigrated the tactics of defense counsel, and suggested that defense counsel fabricated a defense. In particular, Petitioner states that during closing argument the prosecutor argued that the language used by Ms. Gatewood in her testimony was provided to her by defense counsel and that her testimony was rehearsed and contrived.   Petitioner argues that by arguing in this manner the prosecutor argued matters not in evidence and prejudiced Petitioner.  See Doc. 1, Attach.

In Ground 12 of his § 2254 Petition, Petitioner does not refer to specific statements made by the prosecutor during closing argument.  The court will assume that Petitioner is referring to the same statements to which he referred in his appeal to the Missouri appellate court.  Before the Missouri appellate court Petitioner stated that the following portion of the State's closing argument was improper:

> Now, the defense gets up here and their job is just to point out every inconsistency in the case that there is; all right?  And they do it in such a manner that they start to step on themselves, okay.  In one respect [Petitioner's counsel] wants you to believe that Peter Siegel and Thomas Franklin are friends and that Peter Siegel - - and by the way he never said he never discussed the case with Thomas Franklin, she asked him about whether he discussed something with him at a particular time.

Resp. Ex. A6 at 451-52.

Petitioner's counsel objected to this statement of the prosecutor on the grounds that the prosecutor was misstating the evidence. The court stated that the jury will recall the evidence.  The prosecutor then continued to argue and stated that:

27

He never talked about the case, she asked him on a particular time with respect to the lineups, and he said, no, we didn't discuss it then; all right?

But now what, what's her inference? That they rehearsed their testimony? That they were covering each other because they were friends?  Well, now, what if that's the case then why didn't Thomas Franklin get up here and say oh, yeah, I picked out No. 3.  I picked out No. 3 because Peter Siegel told me to pick out No. 3, so that's what I did when the police came out to my house.

If that was the case he would have gotten up on the stand and told you at the time who [he] picked out in the photo lineup, but he didn't do that.  He didn't remember.  [Petitioner's counsel] can't have it both ways, it's either one or the other.  That's what they do, the bring out so many inconsistencies.

Resp. Ex. A6 at 452-53.

Petitioner's counsel objected "to being relegated to what 'they' do" and the court said that the jury will recall the evidence. Id. at 454.  Later in the prosecutor's closing argument, he referred to Franklin's tentatively identifying Petitioner from a photo line-up and to Siegel's positively identifying Petitioner.  The prosecutor's then stated, in regard to the photo line-up that Petitioner has "ears in this picture, ....  That's another thing [Petitioner's counsel] wants both ways.  She stands up here and argues that the video is no good.  Why did they do this video if they had a photo lineup?  Well, remember, she's arguing the photo lineup doesn't count." Id. at 456.  Petitioner's counsel then objected on the grounds that she never said the photos did not count and the court said that the jury will recall counsel's argument.

The prosecutor then continued to state that if the prosecution did not have the video line-up, "what do you think [Petitioner's counsel] would be doing?  She'd be standing up here, standing up here pounding on the bench." Id. at 456-57.  Petitioner's counsel then asked to approach the bench and the court denied her request.  The prosecutor continued to state that "you can't depend

28

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

on the photo lineup of these two gentlemen, there was no video lineup done, okay?  So [Petitioner's counsel] can't have it both ways."  Id. at 457.

Upon considering whether the above described closing argument of the prosecutor was proper, the Missouri appellate court stated:

> Considerable latitude is tolerated in summation.  State v. Fuhr, 660 S.W.2d 443, 448 (Mo. App. 1983).  A prosecuting attorney may comment on the evidence and the credibility of witnesses and, in the process, may belittle and point to the improbability and untruthfulness of specific testimony.  State v. Weaver, 912 S.W.2d 499, 513 (Mo. 1995).  The courts are vested with considerable discretion in controlling closing arguments.  State v. Rousan, 961 S.W.2d 831, 851 (Mo. 1998).  Unless the trial court abuses its discretion and such abuse results in prejudice to the defendant, the trial court's ruling will not be disturbed.  Fuhr, 660 S.W.2d at 448.

> During defendant's closing argument, defense counsel pointed out the inconsistencies inherent in the identification of defendant and argued that because of the close friendship between victim and Siegel, Siegel wanted to see somebody brought to justice.

Resp. Ex. E at 6-7.

The Missouri appellate court continued to state that permitting the allegedly objectionable prosecutorial argument was not an abuse of discretion nor did it prejudice Petitioner.  The appellate court continued to state that:

> Defense counsel's job is not to confuse the jury but rather to "faithfully, honestly, and consistently represent the interests, and protect the rights, of his client."  State v. Spears, 821 S.W.2d 537, 542 (Mo. App. 1991).  However, it is well established that a prosecutor is permitted to exceed the normally recognized limits of closing argument in retaliation to defense counsel's argument.  State v. Hill, 808 S.W.2d 882, 887 (Mo. App. 1991).  Defense attorney addressed the issues of inconsistent identifications and Siegel's desire for retribution in his closing argument, and the trial court did not abuse its discretion in allowing the state to speak to the issues during rebuttal.

Resp. Ex. E at 7.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Pursuant to Williams, the court will address federal law applicable to the circumstances under which a criminal defendant's constitutional rights are violated by the prosecutor's closing argument.  Under federal law, to establish a violation of due process due to improper argument, a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (Darden);  Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). See also, Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994).  Petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. See  Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's commends so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996) (quoting Darden, 477 U.S. at 181).   As further said by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

The Eighth Circuit has held in regard to prosecutorial argument that:

> This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> See <u>United States v. McGuire</u>, 45 F.3d 1177, 1189 (8th Cir.1995); <u>United States v. Hernandez</u>, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." <u>Hernandez</u>, 779 F.2d at 460; <u>see also</u> <u>United States v. Eldridge</u>, 984 F.2d 943, 946-47 (8th Cir.1993).

<u>United States v. Conrad</u>, 320 F.3d. 851, 854 (8th Cir. 2003).

Additionally, under federal law  "[t]he trial court has broad discretion in controlling the direction of opening statements and closing arguments." <u>United States v. Johnson</u>, 968 F.2d 768, 769 (8th Cir.1992).

While the Missouri appellate court did not cite federal law in ruling on the issue raised in Petitioner's Ground 12, this court finds that the Missouri appellate court's decision in regard to the issue raised in Petitioner's Ground 12 is consistent with the Supreme Court's holding in <u>Darden</u>,  477 U.S. at 181, and with other federal cases which address the circumstances under which prosecutorial argument violates a defendant's constitutional rights.  As such, the court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 12 is not contrary to federal law and that it is a reasonable interpretation of federal law.  Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.  The court finds, therefore, that Petitioner's Ground 12 is without merit and that it should be dismissed.

## VII.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner has procedurally defaulted the issues raised in Grounds 1, 2, 4-10, and 13 of his § 2254 Petition.  The court further finds that the issues raised in Petitioner's Grounds 3, 11, and 12 are without merit and that his § 2254 Petition for

31

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

habeas relief should be denied in its entirety.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude.  Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter.  See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion Requesting Appointment of Counsel and for an Evidentiary Hearing is **DENIED**; [Doc. 23]

**IT IS FURTHER ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirely [ Doc. 1];

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of  August, 2004.

32

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com